## NEILL v. JACKSON and another.

*(District Court, W. D. Pennsylvania.  ——, 1881.)*

1. DECREE—ATTACKING COLLATERALLY.

     The decree of a district court of the United States, upon a bill in equity filed by an assignee in bankruptcy against an assignee under the bankrupt's deed of voluntary assignment, requiring the latter to deliver to the former assets of the bankrupt, is conclusive in all collateral proceedings.

2. ASSIGNEE—WHEN PROTECTED.

     The voluntary assignee is entitled to the protection of such decree, notwithstanding, by consent of the parties, he withdrew his appeal therefrom, and by the like consent the district court modified its decree, it appearing that he acted in good faith and under the advice of counsel.

3. SAME—ACCOUNTING.

     But the modified decree having excepted from the order directing the delivery of the assets to the assignee in bankruptcy certain moneys which the voluntary assignee had collected and claimed to have disbursed under the deed of voluntary assignment, *held*, that to the extent of the excepted fund he might be compelled to settle an account of his trust in the state court having jurisdiction thereof.

*S. T. Neill*, for complainant.

*John J. Henderson*, for respondent.

In Equity.   *Sur* application for injunction to restrain the defendants from proceeding in the court of common pleas of Crawford county, Pennsylvania, to compel Joseph A. Neill to settle an account as trustee under a deed of voluntary assignment, etc.

ACHESON, D. J.   I agree with the learned counsel of the complainant as to the conclusive effect of the decree of this court (made by the late Judge Ketcham) in the case of William H. Abbott, assignee in bankruptcy of the Titusville Savings Bank, against Joseph A. Neill, in so far as that decree operated upon the assets of the bankrupts by requiring the delivery thereof to the assignee in bankruptcy. No opinion having been filed by Judge Ketcham, the ground of his decision does not certainly appear.   It is enough, however, that a decree was made by a court having jurisdiction of the parties and subject-matter of the suit, and that the decree stands in force.   It is true that, by consent of the parties, an appeal from said decree, which the complainant, Neill, had taken to the circuit court, was subsequently withdrawn, and thereupon this court, by and with the like consent, modified its decree.   But it seems to me that the complainant was not thereby deprived of the protection of the decree.   There is nothing to suggest bad faith on his part in withdrawing his appeal, and he was acting under the advice of counsel learned in the law.   *Bradley's*

*Appeal*, 89 Pa. St. 514. Moreover, I do not see how the creditors were injured by the withdrawal of the appeal; for it was a matter of indifference to them whether the assets of the Titusville Savings Bank were administered in the court of common pleas of Crawford county, Pennsylvania, under the deed of voluntary assignment, or in the United States district court for the western district of Pennsylvania, sitting in bankruptcy. The principles of distribution in both tribunals are practically the same.

But what was the effect of the modification of the decree to which both parties consented? By the original decree, the complainant, Neill, was required to deliver to the assignee in bankruptcy the entire assets and evidences of indebtedness belonging to the Titusville Savings Bank which had come into his possession under the deed of voluntary assignment. The modified decree, however, contains this important qualification, viz.:

"Except such notes, bills, mortgages, or other securities as he may have collected and converted into money in his capacity as assignee of said co-partnership, (the Titusville Savings Bank,) under state law."

And the decree then proceeds as follows:

"And that the said Joseph A. Neill do pay over to said * * * assignee in bankruptcy the sum of eight hundred and one and eleven one-hundredths dollars, ($801.11,) that sum being the unexpended balance of the sum of twenty six thousand four hundred and thirty-two and ninety-nine one-hundredths dollars, ($26,432.99,) the amount of assets of said copartnership collected by said Joseph A. Neill, assignee under state law, after allowing credit for twenty-one thousand one hundred and forty-eight and forty-nine one-hundredths dollars ($21,148.49) paid by him to creditors of said copartnership on account, or in compromise of their claims, three thousand one hundred and sixty-one and sixty one-hundredths dollars ($3,161.60) paid out for the just and reasonable expenses of his said trust, and thirteen hundred and twenty-one and nineteen one-hundredths dollars ($1,321.19) for his commissions in collecting and disbursing the said sum of $26,432.99."

Now, it clearly appears from the terms of the decree, as modified, that $25,631.88, ($26,432.99, less $801.11,) which the complainant, Neill, had collected or converted into money in his capacity of assignee under the deed of voluntary assignment, were not to pass to the assignee in bankruptcy. These moneys were expressly excepted from the operation of the decree requiring the delivery or payment of assets to the assignee in bankruptcy. To the extent of these moneys the trust under the deed of voluntary assignment was distinctly recognized as valid.

v.8,no.3—10

The defendants, whom the complainant seeks to enjoin from bring-ing him to an account in the court of common pleas of Crawford county, are creditors of the Titusville Savings Bank, and they alleged that the complainant has not lawfully disbursed the said sum of $25,631.88, and that they have not received their *pro rata* shares thereof to which they are entitled under the deed of voluntary assign-ment. Now, if these allegations are true, are these creditors remedi-less, and where can they obtain relief, if not in the state court? Why should not the complainant file an account in the court of com-mon pleas of Crawford county to the extent of the assets which were excepted from the operation of the decree of this court? It is true, the decree recites that the complainant had made disbursements, to the amounts specified, to creditors and to the expenses of his trust, and his commissioners are also specified. But these recitals were merely to show how the cash in his hands, which he was to pay over to the assignee in bankruptcy, was reduced to the sum of $801.11. No detailed account was exhibited to this court, nor were the com-plainant's vouchers produced; and the defendants had no oppor-tunity to be heard upon the question of distribution. Can it be maintained, then, that creditors who are entitled to shares of this fund, but who receive nothing, are concluded by vague recitals in the decree of this court? This would be to pervert the decree from its manifest purpose. Clearly this court did not intend to undertake the distribution, among the parties entitled thereto, of the assets expressly excepted from the operation of its decree, which the com-plainant "collected and converted into money in his capacity of as-signee of said copartnership under state law." As to these assets, therefore, the complainant must be left to settle his account in the appropriate forum.

And now, July 5, 1881, the injunction prayed for is refused, and the provisional injunction heretofore granted is dissolved.